IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| RHONDA THEUS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:09-cv-02296-SHM-dkv |
| | ) | |
| vs. | ) | |
| | ) | |
| GLAXOSMITHKLINE and | ) | |
| MICHAEL SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT GLAXOSMITHKLINE'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In support of its Motion for Summary Judgment, Defendant GlaxoSmithKline LLC ("GSK") respectfully states the following:

## NATURE OF THE CASE

This civil action arises out of Plaintiff's employment by GSK at its Memphis plant. Plaintiff alleges that: (i) after they learned that she operated sexually-explicit websites, her co-workers and her supervisor, Defendant Michael Smith, harassed her, and (ii) GSK then unlawfully terminated her employment after receiving reports that she had threatened to shoot her co-workers. Based on these allegations, she asserts claims for sexual harassment and retaliation under the Tennessee Human Rights Act (the "THRA"), as well as claims for intentional infliction of emotional distress, assault, and battery. GSK is entitled to summary judgment because the claims are time-barred and otherwise defective.

## STATEMENT OF THE FACTS

Plaintiff began working for a predecessor of GSK in August 1998 and became a GSK employee around July 2001. (Statement of Undisputed Material Facts (hereinafter "SF") ¶ 1.) Throughout her employment, Plaintiff was responsible for operating machinery that prepared and packaged headache powders at the Memphis plant. (SF ¶ 2.)

In early 2007, Plaintiff, using the name "GiniLay," started a business venture in which she posed for sexually-explicit photographs that she published on the Internet and participated in live sexually-explicit videos broadcast over the Internet via "web cam." (SF ¶ 3.) While operating her web cam, Plaintiff would disrobe and engage in sexually-explicit conversation and behavior for her customers. (SF ¶ 4.)

Beginning in July 2007, after some of Plaintiff's co-workers learned of her sexually-explicit websites and activities, Plaintiff claims that she began to experience problems with some of her co-workers. (SF ¶ 5.) On October 3, 2007, Plaintiff lodged her first complaint of co-worker mistreatment with Todd Russell, GSK's Human Resource Advisor, telling Russell that: (i) co-workers were "making jokes and teasing" her, (ii) co-workers joked about putting a nail under her tire, (iii) two female co-workers called her bitch, whore, and slut, (iv) she overheard a female co-worker threaten to fight her, (v) several co-workers had followed her to her home, and (vi) several co-workers had teased her about her relationship with her fiancé. (SF ¶ 6.) Plaintiff acknowledged that she was angry with her co-workers and that she was about to fight one of her female co-workers. (SF ¶ 7.) Plaintiff did not report any sexual harassment, and she indicated to Russell that the mistreatment was a result of co-worker jealousy and animosity. (SF ¶ 8.)

Russell promptly started an investigation, during which he interviewed Plaintiff and at least seven other GSK employees and contractors, including Joe Ervin, who was serving as

Plaintiff's supervisor at that time.  (SF ¶ 9.)  During these interviews, not a single employee corroborated Plaintiff's allegations.  (SF ¶ 10.)  Instead, Plaintiff's co-workers complained that she had exhibited erratic and aggressive behavior toward her co-workers, reporting, among other things, that: (i) Plaintiff discussed her sexually-explicit business activities at work, (ii) Plaintiff threatened to fight her co-workers, (iii) Plaintiff cursed and shouted profanity at her co-workers, calling her female co-workers "bitches and whores," and (iv) Plaintiff deliberately bumped into her co-workers and stared menacingly at them.  (SF ¶ 11.)  Upon the completion of his investigation, Russell could not substantiate the allegations made by Plaintiff.  (SF ¶ 12.)  Accordingly, no disciplinary actions were taken against the Plaintiff's co-workers, and, notwithstanding the multiple allegations made against Plaintiff, no disciplinary action was taken against her. (SF ¶ 13.)

On October 31, 2007, Plaintiff complained to Russell that her co-workers were continuing to talk about her and follow her home, but that they had not otherwise bothered her at work since her prior complaint.  (SF ¶ 14.)  Plaintiff appeared angry and agitated, and Russell recommended that she contact the Employee Assistance Program that was available to GSK employees and that she contact the police if anyone bothered her at home.  (SF ¶ 15.)

Starting around November 11, 2007, Plaintiff took a medical leave of absence from employment, during which time she saw several doctors, while continuing to pursue her sexually-explicit business activities. (SF ¶ 16.)  Plaintiff never complained to any health care providers that she had been sexually harassed, touched inappropriately, or propositioned for dates or sex by any GSK employee or contractor. (SF ¶ 17.)  Plaintiff, however, did tell her health care providers that she was contemplating hurting her co-workers: (i) she told Dr. Diner that she contemplated hurting people and had "revenge on her mind"; (ii) she told Ms. Streete,

her therapist, that she was "close to violence,"; and (iii) she told Dr. Patterson that she had thoughts of hurting her co-workers.  (SF ¶ 18.)

On March 24, 2008, Plaintiff returned to work, at which time Defendant Michael Smith became her supervisor.  (SF ¶ 19.)  Soon thereafter, in early April, Plaintiff complained to Smith that someone had broken into her locker, that some of her co-workers had followed her home, and that a female co-worker had threatened to give her car a flat tire.  (SF ¶ 20.)  At the same time, several of Plaintiff's co-workers complained to Smith that Plaintiff was acting in a threatening manner and had made statements about "guns and shooting motherfuckers."  (SF ¶ 21.)  Smith promptly reported Plaintiff's and her co-workers' complaints to his supervisors, Troy Hudson and Scott Martin, who asked for human resources assistance.  (SF ¶ 22.)

On April 8, immediately after receiving these reports, Russell started an investigation, during the course of which he interviewed Plaintiff, Smith, and at least eleven other co-workers of Plaintiff.  (SF ¶ 23.)  Plaintiff's co-workers complained that Plaintiff was cursing at them, acting in an aggressive, erratic, and threatening manner, and threatening workplace violence:

- Ms. Sharp reported that Plaintiff said that "if any of these whores fuck with me, I am going to go to my car and get my pistol and blow their ass away."

- Ms. Seals reported that Plaintiff had cursed at her, stared at her in a menacing manner, and intentionally rammed her shoulder into Ms. Seals, and that she had been told that Plaintiff "had a gun for her."

- Ms. Merriweather reported that she had heard Ms. Theus say that "if any of these whores fuck with me, I am going to go to my car and get my pistol and blow their ass away."

- Ms. Bowles reported that Plaintiff had bumped into her and stared at her in a menacing manner and that she had heard Ms. Theus kept a gun in her truck.

- Mr. Harris reported that Plaintiff told him that "she brings a gun to work and the next time she catches them [her co-workers] in her neighborhood,

she is going to blow their head off" and that he heard Plaintiff state that "if any of these whores fuck with me I am going to go to my car and get my pistol and blow their ass away."

(SF ¶ 24.)

When Plaintiff spoke with Russell, she reported that: (i) her co-workers had resumed talking about her and picking on her, (ii) she heard that a co-worker had put a nail under her tire, (iii) a female co-worker had called her bitch, whore, and tramp, (iv) several co-workers had followed her to her home, (v) several co-workers had teased her about her relationship with her fiancé, (vi) two female co-workers had bumped into her, and (vii) someone had broken into her locker.  (SF ¶ 25.)  Plaintiff acknowledged that she had told certain co-workers, "don't worry about me, you better worry about yourself," but she denied bringing a gun to work and threatening to shoot them.  (SF ¶ 27.)  She stated that Vanessa Pulliam and Clarissa Reaves were witnesses who would support her allegations.   (SF ¶ 28.)   She did not complain of sexual harassment, and again stated her belief that the mistreatment was a result of co-worker animosity and jealousy.  (SF ¶ 29.)

Plaintiff was placed on paid administrative leave, pending the completion of the investigation, and was escorted off GSK property.  (SF ¶ 30.)  Russell then interviewed Pulliam and Reeves, who Plaintiff testified were trustworthy and believable.  (SF ¶ 31.)  Pulliam and Reeves denied witnessing the mistreatment alleged by Plaintiff.  (SF ¶ 32.)  Pulliam told Russell that she had never seen anyone harassing or picking on Theus and that Theus had told her that "these people [her co-workers] need to leave me alone before I hurt somebody out here."  (SF ¶ 33.)  Reeves told Russell that she had never seen anyone harassing or picking on Plaintiff.  (SF ¶ 34.)  Russell re-interviewed several employees who had reported that Plaintiff had threatened workplace violence, and they confirmed their prior statements.  (SF ¶ 35.)

Upon his completion of the investigation, Russell concluded that substantial evidence indicated that Plaintiff had violated GSK's Employee Conduct Policy and Violence-Free Workplace Policy.  (SF ¶ 36.)  As a result, and after consultation with GSK's legal department and a senior human resources person, Russell terminated Plaintiff's employment, effective April 25, 2008.  (SF ¶ 37.)  Neither Smith nor any supervisor of Plaintiff was consulted or in any way participated in the decisions to suspend and terminate Plaintiff's employment.  (SF ¶ 38.)

After commencing this lawsuit, Plaintiff, for the first time, claimed that she experienced supervisor harassment during the course of her GSK employment.  Specifically, she now claims that, between March 24, 2008 and April 5, 2008, Smith: (i) on one occasion, while saying nothing, "brushed up" against her, "threw kisses" at her, and winked at her, (ii) on another occasion, asked Plaintiff to dinner, and (iii) on another occasion asked whether she had reconsidered his prior dinner invitation.  (SF ¶ 39.)  Plaintiff acknowledges that after she declined his alleged invitations Smith took no adverse action against her.  (SF ¶ 40.)

In addition, Plaintiff, for the first time, claimed that: (i) co-worker Marcus Harris massaged her shoulder on two occasions, touched her hand and leg on another occasion, propositioned her for sex on another occasion, bumped into her and stared at her, asked her out on dates, and spread false rumors about their relationship, (ii) co-worker Jerome Foster asked her out on dates and to have sex and on one occasion touched her "butt" and knee several times, (iii) various other co-workers asked her out on dates, and (iv) her co-workers, especially her female co-workers, regularly called her offensive names like "bitch, whore, slut, troublemaker, [and] internet whore."  (SF ¶ 41.)  Plaintiff claims that she rejected all but one invitation for a date and that, following her rejections, her co-workers laughed and called her names.  (SF ¶ 42.)  She

contends that her co-workers engaged in this conduct because they did not like her and were jealous of her, as a result of her sexually-explicit business activities.  (SF ¶ 43.)

Plaintiff admits that she never reported (a) that she had been touched, inappropriately or otherwise, by *any* GSK employee or contractor; (b) that she had been sexually harassed by *any* GSK employee or contractor; (c) that *any* GSK employee or contractor had mistreated her because she is a woman; (d) that *any* GSK employee or contractor had propositioned her for sex; or (e) that she had been harassed or bothered in any way by *any* GSK supervisor.  (SF ¶ 44.)  All she now claims is that, on one occasion, she told Smith that Foster had asked her on a date.  (SF ¶ 44.)

## ARGUMENTS

I.   **GSK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SEXUAL HARASSMENT CLAIMS.**

   A.   **Plaintiff's Claims Are Time-Barred.**

Under the THRA, claims of discrimination and harassment must be filed within one year after the discriminatory act.  Tenn. Code Ann. § 4-21-311(d).  If a plaintiff fails to establish evidence of an act of actionable sexual harassment within the one-year period preceding the filing of a lawsuit, then any claim of sexual harassment is time-barred.  *See, e.g., Jones v. City of Franklin*, No. 08-5180, 2009 U.S. App. LEXIS 2226, *14-15 (6th Cir. Feb. 5, 2009), *cert. denied*, 175 L. Ed. 2d 559, 2009 U.S. LEXIS 8813 (U.S. 2009) (attached as Exhibit A) (affirming summary judgment for employer on THRA harassment claim because there was no evidence of actionable harassment within one year of the date the lawsuit was filed); *c.f., Scarborough v. Brown Group, Inc.*, 972 F. Supp. 1112, 116-17 (W.D. Tenn. 1997) (granting summary judgment on sexual harassment claims under Title VII because no "act[] of sexual harassment" occurred within the limitations period).

Because she filed this action on April 7, 2009, Plaintiff must establish that she experienced actionable sexual harassment on or after April 7, 2008.  Plaintiff, cannot establish that she experienced actionable supervisor sexual harassment on or after April 7, 2008 because she testified that the latest acts of alleged supervisor sexual harassment occurred between March 24 and April 5, 2008.  Likewise, Plaintiff cannot establish that she experienced actionable co-worker sexual harassment on or after April 7, 2008 because she testified that only two incidents involving co-workers occurred on or after April 7, neither of which constituted sexual harassment: (i) female co-worker Ollie Bowles allegedly bumped her shoulder; and (ii) male co-worker Jerome Foster allegedly witnessed that she had been pulled over by the police.  (SF ¶ 26.) Accordingly, because there is no evidence that Plaintiff experienced <u>any</u> act of sexual harassment within the one-year period preceding the filing of this lawsuit, her claims of sexual harassment are time-barred, and GSK is entitled to summary judgment.

**B.      Plaintiff's Sexual Harassment Claims Are Defective.**

To establish a *prima facie* case of sexual harassment, a plaintiff must establish, by a preponderance of evidence, that: (i) she is a member of a protected class, (ii) she was subjected to unwelcome harassment, (iii) the harassment was based on her sex, (iv) the harassment unreasonably interfered with her work performance by creating a hostile work environment, and (v) there is a basis for employer liability.  *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008), *reh'g denied*, 2008 U.S. App. LEXIS 22358 (6th Cir. Oct. 20, 2008) (affirming summary judgment for employer on harassment claims);[1] *see also Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996) (describing elements of claim of co-worker harassment).

---

[1] The THRA should be interpreted in a manner consistent with Title VII's prohibitions on discrimination, including harassment, and federal cases analyzing such claims are persuasive authority.  *Allen v. McPhee*, 240 S.W.3d 803, 812 (Tenn. 2007).

In this case, Plaintiff cannot establish the third, fourth, or fifth elements of a *prima facie* case, and GSK is entitled to summary judgment.

### 1.   The alleged harassment was not sufficiently severe or pervasive.

Actionable sexual harassment must be "sufficiently severe or pervasive to alter the conditions of employment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133, 124 S. Ct. 2342, 2347, 159 L. Ed. 2d 204, 211 (2004).  When considering the severity of the alleged harassment, a court must consider "all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Thornton*, 530 F.3d at 455.  The conduct "must be judged by both an objective and subjective standard:  the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, *and* the victim must subjectively regard that environment as abusive." *Id.* (emphasis added).

### a.   Alleged harassment by Smith.

Plaintiff admits that the alleged harassment by Smith took place over, at most, thirteen days between March 24, 2008 and April 5, 2008.  Plaintiff complains that Smith: (i) on one occasion, while saying nothing, "brushed up" against her, "threw kisses" at her, and winked at her, (ii) on another occasion, asked Plaintiff to dinner, and (iii) on another occasion asked whether she had reconsidered his prior dinner invitation.  (SF ¶39.)  After Plaintiff declined Smith's alleged invitations, he took no adverse action against her.  (SF ¶ 40.)

These acts, if they occurred,[2] are not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment, and GSK is entitled to summary judgment.  *See, e.g.,*

---

[2] Mr. Smith flatly denies that he engaged in any of the conduct Plaintiff alleges, and other than Plaintiff's testimony, there is <u>no</u> evidence that he did.  For purposes of this motion only, however, GSK assumes the truth of Plaintiff's allegations.

*Scarborough*, 972 F. Supp. at 1119, 1122, 1124 (granting summary judgment for employer on sexual harassment claims of three employees because acts including the grabbing of one plaintiff's posterior, the pinching of another plaintiff's buttocks (combined with gender-based name calling and date requests), and the repeated requests for sexual activity directed to another plaintiff by a supervisor were not sufficiently severe or pervasive).

**b.      Alleged co-worker harassment.**

Plaintiff complains only of offensive name-calling and intermittent "harassment:" (i) various co-workers followed her to her home, while neither touching nor speaking to her, (ii) co-worker Harris massaged her shoulder on two occasions, touched her hand and leg on another occasion, propositioned her for sex on another occasion, bumped into her and stared at her, asked her out on dates, and spread false rumors about their relationship, (iii) co-worker Foster asked her out on dates and to have sex and once touched her "butt" and knee several times , (iv) various other co-workers asked her on dates, and (v) co-workers regularly teased her and called her vulgar names.  (SF ¶¶ 6, 25, 41.)  Plaintiff testified that she rejected all but one invitation for a date and that, following her rejections, her co-workers laughed and called her names.  (SF ¶ 42.) This alleged conduct is not actionable harassment because it was neither objectively nor subjectively abusive.

First, a Plaintiff's *conditions of employment* are not altered by a co-worker's actions *outside of the workplace*, particularly when those actions are not accompanied by physical contact or dialogue with the employee.  Second, these acts simply are not sufficiently severe and pervasive to create an environment that a reasonable person would find hostile or abusive.  *See, e.g., Scarborough,* 972 F.Supp. at 1119, 1122, 1124.  Finally, Plaintiff's failure to report *any* of this conduct to her employer *or her healthcare providers* (to whom she reported substantial

personal information), conclusively demonstrates that she did not regard the environment as abusive.

### 2.      The alleged co-worker harassment was not based on Plaintiff's sex.

To establish a claim of actionable sexual harassment, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201, 208.  Title VII [like the THRA] is not a "general civility code." *Oncale*, 523 U.S. at 80-81, 118 S. Ct. at 1002, 140 L. Ed. 2d at 207-08. It "does not prohibit profanity alone, however profane," and it "does not prohibit harassment alone, however severe and pervasive." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1301-02 (11th Cir. 2007), *cert. denied*, 552 U.S. 991, 128 S. Ct. 499, 169 L. Ed. 2d 341 (2007).  Instead, considering all of the circumstances, including the particular context, it prohibits only sufficiently severe harassment that discriminates based on a protected category such as sex.  *Id.*; *Oncale,* 523 U.S. at 80-81, 118 S. Ct. at 1002, 140 L. Ed. 2d at 207-08.

Excluding the alleged date requests and physical touching by Harris and Foster, which are not actionable for other reasons, Plaintiff complains that her co-workers, especially her female co-workers, called her offensive names like "bitch, whore, slut, troublemaker, [and] internet whore" and followed her to her home, without comment or contact.  (SF ¶¶ 25, 41.) According to Plaintiff, her co-workers engaged in this conduct, not because she was a woman, but because they did not like and were jealous of her as a result of her sexually-explicit business activities.  (SF ¶ 29.)

Plaintiff's claim is not based on a contention that her co-workers subjected her and other women to gender-specific vulgarity or mistreatment that demonstrated animus *against women*.

Instead, Plaintiff's claim is based on her contention that her co-workers mistreated her in various ways because they harbored animus *against her sexually-explicit business activities*. Accordingly, she cannot establish a claim of actionable co-worker harassment. *See Brown v. Henderson*, 257 F.3d 246, 255-56 (2d Cir. 2001) (affirming summary judgment for employer because harassment related to plaintiff's sexual activities was based on workplace dispute and animosity, not plaintiff's sex); *c.f. Oates v. Chattanooga Publ'g Co.*, 205 S.W.3d 418, 427 (Tenn. Ct. App. 2006), *appeal denied*, 2006 Tenn. LEXIS 865 (Tenn. Sept. 25, 2006) (affirming summary judgment on harassment claim because harassment was based on co-worker jealousy and animosity, not because of a protected characteristic).

### 3. GSK is not liable for the alleged harassment.

#### a. GSK has no liability for the alleged supervisor harassment.

Employers are vicariously liable for a supervisor's actionable sexual harassment of a supervisee. *Allen*, 240 S.W.3d at 812. If, however, "the harassing supervisor has not taken or instigated a tangible employment action against the employee . . . the employer may raise an affirmative defense to liability." *Id.* at 813. Specifically, the employer may avoid liability if it establishes that: (i) "it took reasonable measures to prevent and correct discriminatory conduct" and (ii) "the employee unreasonably failed to take advantage of these preventative and corrective measures." *Id.*

In this case, the undisputed evidence demonstrates that Smith did not participate in anyway in the decisions to suspend and terminate the Plaintiff's employment. (SF ¶ 38.) Accordingly, GSK is entitled to rely on the affirmative defense. *Id.* at 813.

#### (i) GSK took reasonable measures.

The first component of the affirmative defense requires proof that the employer took reasonable measures to prevent and correct discriminatory conduct.  *Id.* at 813.  The "existence of an anti-harassment policy weighs heavily in favor of a conclusion that an employer has exercised reasonable care to prevent harassment."  *Id.* at 816.  The employer must further show that the policy is "reasonably designed and reasonably effectual," which can be established by showing that the policy was reasonably published, required supervisors to report harassment, permitted formal and informal complaints, provided a mechanism for bypassing a harassing supervisor when complaining, and provided training.  *See id. at 816-17; Thornton*, 530 F.3d at 456.  Such proof generally satisfies this element of the defense.  *Thornton*, 530 F.3d at 456.

In this case, the undisputed evidence establishes that GSK took reasonable measures to prevent and correct discriminatory misconduct: (i) GSK established, published, and made available an anti-harassment policy to all of the employees at the plant, (ii) this policy required supervisors to report harassment, permitted formal and informal complaints, and provided a mechanism for bypassing a harassing supervisor, (iii) GSK provided anti-harassment training to all employees at the plant, and (iv) Plaintiff acknowledged receiving the anti-harassment policy and training.  (SF ¶ 45.)  Accordingly, GSK has conclusively established the first component of the defense.  *See, e.g., Thornton*, 530 F.3d at 457-58.

           **(ii)**       **Plaintiff unreasonably failed to take advantage of those measures.**

The second component of the affirmative defense requires proof that the employee failed to take advantage of the preventative and corrective measures.  *Allen*, 240 S.W.3d at 813.  An employee's unreasonable failure to use a complaint procedure provided by the employer "will normally suffice to satisfy" this component of the defense.  *Id.* at 817.  Likewise, an employee's "speculative fear of retaliation or subjective belief in the futility of complaining" does not excuse

the employee's failure to use the provided procedure.  *Id*. at 817-18; *see also Thornton*, 530 F.3d at 457.

In this case, Plaintiff admits that she never reported *any* act of supervisor harassment. (SF ¶ 44.)  Plaintiff contends that she did not report the harassment because she was "afraid of losing [her] job."  (Pl. Dep. 241:20-21.)  The undisputed evidence, however, demonstrates that there was no "credible threat of retaliation" that prevented her from reporting supervisor harassment, particularly when she admits that her supervisor took no adverse action when she declined his alleged dinner invitation and she did report other alleged misconduct.  Accordingly, GSK has conclusively established the second component of the affirmative defense.  *See, e.g., Thornton,* 530 F.3d at 457-58.

**b.      GSK has no liability for the alleged co-worker harassment.**

While liability for supervisor harassment is vicarious, subject to an affirmative defense, liability for co-worker harassment is direct, requiring that the plaintiff establish that "the employer knew, or should have known of the harassment *and* failed to respond with prompt and appropriate corrective action."   *Campbell*, 919 S.W.2d at 31 (emphasis added); *see also Blankenship v. Parke Care Ctrs.*, 123 F.3d 868, 872 (6th Cir. 1997), *cert. denied*, 522 U.S. 1110, 118 S. Ct. 1039, 140 L. Ed. 2d 105 (1998).

Plaintiff testified that, during the course of her meetings with Todd Russell, she reported that: (i) co-workers were "making jokes and teasing" her, (ii) co-workers joked about putting a nail under her tire, (iii) three female co-workers called her bitch, whore, slut, and tramp, (iv) she overhead a female co-worker threaten to fight her, (v) several co-workers had followed her to her home, (vi) several co-workers had teased her about her relationship with her fiancé, (vii) two female co-workers had bumped into her, and (viii) someone had broken into her locker.  (SF ¶¶

6, 25.)  She also testified that she told Smith that: (i) someone had broken into her locker, (ii) that some of her co-workers had followed her home, (iii) that a co-worker had threatened to give her car a flat tire, and (iv) co-worker Foster had asked her on a date.  (SF ¶¶ 20, 44.)  Plaintiff, however, did not complain of sexual harassment, and GSK had no knowledge of such conduct. (SF ¶ 8, 29, 44.)  Accordingly, the undisputed evidence establishes that GSK neither knew nor should have known of actionable harassment, and GSK is entitled to summary judgment.  *See, e.g.*, *Glover v. Unipres U.S.A, Inc.*, No. 3:08-0807, 2009 U.S. Dist LEXIS 45626, **5-7 (M.D. Tenn. June 1, 2009) (attached as Exhibit B) (granting summary judgment for employer on co-worker harassment claim because Plaintiff failed to report harassment).

Likewise, the undisputed evidence demonstrates that, notwithstanding Plaintiff's failure to allege actionable harassment, GSK immediately initiated comprehensive investigations, involving interviews with Plaintiff and numerous co-workers, in connection with her allegations. (SF ¶ 9, 23.)  Accordingly, the undisputed evidence establishes that GSK's response to Plaintiff's allegations was not only in good faith, but also reasonable, and GSK is entitled to summary judgment.  *See, e.g.*, *Blankenship*, 123 F.3d at 873-74 (holding that to establish employer liability for co-worker harassment, plaintiff must establish more than mere negligence and that an employer who responds to a complaint in good faith is entitled to summary judgment).

## II.    GSK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM.

### A.    Plaintiff Cannot Establish a P*rima Facie* Case.

To establish a *prima facie* case of retaliation, a plaintiff must show that:  (i) she engaged in activity protected by the THRA; (ii) the exercise of her protected rights was known to the defendant; (iii) the defendant thereafter took a materially adverse action against her; and (iv) there was a causal connection between the protected activity and the materially adverse action.

*Allen*, 240 S.W.3d at 814; Tenn. Code Ann. § 4-21-301(1).  Lodging "[g]eneral grievances which are not related to discrimination" is not protected activity that can support a claim of retaliation. *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 656 (Tenn. Ct. App. 2001).  A complaint "must indicate that discrimination occurred because of sex . . . or some other protected class," and "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Longs v. Ford Motor Co.*, 647 F. Supp. 2d 919, 932-33 (W.D. Tenn. 2009).

In this case, the evidence, considered in the light most favorable to Plaintiff, establishes that Plaintiff reported only that: (i) co-workers were "making jokes and teasing" her, (ii) co-workers joked about putting a nail under her tire, (iii) three female co-workers called her bitch, whore, slut and tramp, (iv) she overhead a female co-worker threaten to fight her, (v) several co-workers had followed her to her home, (vi) several co-workers had teased her about her relationship with her fiancé, (vii) two female co-workers had bumped into her, (viii) someone had broken into her locker, and (ix) co-worker Foster asked her on a date.  (SF ¶¶ 6, 20, 25, 44.) She never complained of sexual harassment or that she was being mistreated because she is a woman.  (SF ¶ 44.)  Accordingly, because Plaintiff cannot establish that she engaged in protected activity, GSK is entitled to summary judgment.

**B.      Plaintiff Cannot Establish Pretext.**

Once a plaintiff establishes a *prima facie* case of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for the adverse action.  *Allen*, 240 S.W.3d at 820-21.  If the defendant articulates such a reason, the plaintiff then must demonstrate that the defendant's articulated reason is pretextual and that the adverse action actually was motivated by a retaliatory intent.  *Id*.  To demonstrate pretext, the plaintiff must establish that the articulated reason: (i) has

no basis in fact, (ii) did not actually motivate the decision, or (iii) was insufficient to warrant adverse action. *Ladd v. Grand Trunk Western R.R.*, 552 F.3d 495, 502 (6th Cir. 2009).

The undisputed evidence demonstrates that GSK terminated Plaintiff's employment because, after a thorough investigation into allegations that Plaintiff had threatened workplace violence, GSK concluded that she had violated GSK's Employee Conduct Policy and Violence-Free Workplace Policy. (SF ¶ 36.) This, indisputably, is a legitimate non-retaliatory reason. *See, e.g.*, *Smith v. Leggett Wire. Co.*, 220 F.3d 752, 762 (6th Cir. 2000).

Furthermore, the undisputed evidence demonstrates that Plaintiff cannot establish that this reason is pretextual or that the decision was motivated by retaliatory intent. First, the weight of evidence establishes that Plaintiff actually threatened her co-workers – at least six co-workers, including a co-worker who Plaintiff claimed was a witness, reported facts indicating that Plaintiff had threatened workplace violence, and, notwithstanding her denial that she made such a threat, Plaintiff admits that she told her health care providers that she was contemplating hurting her co-workers. (SF ¶¶ 18, 24, 33.) *See, e.g.*, *Ladd*, 552 F.3d at 502-03 (affirming summary judgment on retaliation claim when co-worker statements provided basis in fact for decision notwithstanding plaintiff's denials). Second, regardless of whether the threat actually *was made*, there is no dispute that GSK *received* reports of threats from several witnesses and acted upon an honest belief in the reasons for the decision. (SF ¶ 24, 33.) *See, e.g.*, *id.* (holding that even if all co-workers reporting plaintiff misconduct lied, employer acting upon an honest belief in those reports is not liable for retaliation). Finally, Plaintiff has provided no evidence that other employees who were believed to have threatened to shoot their co-workers were not discharged by GSK. *See, e.g.*, *id.* (holding that plaintiff who failed to identify similarly situated employees

who were treated differently had failed to establish pretext).   Accordingly, GSK is entitled to summary judgment.

## III.   GSK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S IIED CLAIM.

### A.   Plaintiff's Claim is Time-Barred.

Claims of intentional infliction of emotional distress (IIED) must be brought within one year after the cause of action accrued.  Tenn. Code Ann.  § 28-3-104 (2009); *Scarborough v. Brown Group, Inc.*, 972 F. Supp. at 1124.  Plaintiff filed this lawsuit on April 7, 2009; therefore, any claim based on acts occurring prior to April 7, 2008 is time-barred.  Plaintiff's IIED claim is based on the alleged harassment by Smith, (Compl. ¶¶ 28-29), and Plaintiff testified that the alleged harassment took place between March 24 and April 5, 2008.  (SF ¶ 39.)  Accordingly, her claim is time-barred and GSK is entitled to summary judgment.

### B.   The Alleged Misconduct Was Not Outrageous.

To establish a claim for IIED, a Plaintiff "must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the Plaintiff."  *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004).  To establish sufficiently outrageous conduct, a plaintiff must establish that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*  Outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppression or other trivialities."  *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

In this case, Plaintiff has alleged that Smith winked at her, threw kisses at her, brushed against her, and invited her to dinner.  (SF ¶ 39.)  Such conduct clearly is not sufficiently

outrageous to support an IIED claim.  Likewise, Plaintiff testified that she has experienced no change in her daily routine since February 2008, other than the cessation of her sexually-explicit business activities, and that she is a "happy mom" and an "ordinary suburban housewife."  SF ¶ 46.)  Plaintiff's testimony prevents her from establishing that Smith's alleged conduct caused her "serious mental injury."  Accordingly, GSK is entitled to summary judgment.

      **C.     GSK Is Not Vicariously Liable For The Alleged Intentional Acts.**

An employer is vicariously liable for acts of its employee that are undertaken in the course and scope of employment, that are undertaken in obedience of express orders or directions, or that are undertaken to benefit the employer with the consent and ratification of the employer.  *White v. Revco Discount Drug Ctrs., Inc.*, 33 S.W.3d 713, 723-24 (Tenn. 2000), *reh'g denied*, 37 S.W.3d 885 (Tenn. 2001); *see also Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937-38 (Tenn. Ct. App. 1992).  An employer is not vicariously liable for the intentional torts of one employee against another employee unless the employer intended the tortious conduct.  *Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1082 (E.D. Tenn. 1995) (granting summary judgment for employer on IIED claim).

In this case, the undisputed evidence demonstrates that the alleged intentional misconduct of Smith was not undertaken in the course and scope of his GSK employment, at the direction of GSK, for the benefit of GSK, or with the knowledge of GSK and that GSK did not intend the alleged misconduct.  Accordingly, GSK is entitled to summary judgment because it has no vicarious liability.

**IV.     GSK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ASSAULT AND BATTERY CLAIMS.**

      **A.     Plaintiff's Claims Are Timed-Barred.**

The statute of limitations for claims of assault and battery is one year.  Tenn. Code. Ann. § 28-3-104 (2009).  Plaintiff's assault and battery claims are based on the alleged acts of Smith, (Compl. ¶¶ 33-36), and Plaintiff has testified that those acts occurred between March 24 and April 5, 2008.  (SF ¶ 39.)  Accordingly, her claims are time-barred, and GSK is entitled to summary judgment.

**B.      GSK Is Not Vicariously Liable For the Alleged Intentional Acts.**

GSK is not vicariously liable for the alleged assault and battery by Smith for the same reasons it is not vicariously liable for the alleged intentional infliction of emotional distress. Accordingly, it is entitled to summary judgment.

### CONCLUSION

Ultimately, this case is based on Plaintiff's contention that her co-workers began to pick on her because they did not like and were jealous of her because of her sexually-explicit business activities.  While she reported that her co-workers were picking on her, she never reported sexual harassment.  Her co-workers, however, reported that Plaintiff was acting erratically at work and had threatened to shoot and otherwise harm them.   Following an investigation, Plaintiff's employment, understandably, was terminated.   While Plaintiff now contends that additional misconduct occurred, which she neither reported to GSK nor to her healthcare providers, such misconduct, if it occurred, does not establish any claims.  Plaintiff's claims are time-barred and otherwise deficient, and GSK is entitled to summary judgment.

This the 29th day of January, 2010.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P

By:   s/ Catherine E. Lee
Kerry Shad
N.C. State Bar No. 18410
Zebulon D. Anderson
N.C. State Bar No. 20831
Catherine E. Lee
N.C. State Bar No. 35375
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone:      (919) 821-1220
Facsimile:      (919) 821-6800
E-Mail: kshad@smithlaw.com
         zanderson@smithlaw.com
         clee@smithlaw.com

*Attorneys for Defendants*

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.

By: s/ Jay A. Ebelhar
Angie C. Davis
Tennessee Bar No. 20043
Jay A. Ebelhar
Tennessee Bar No. 22770
2000 First Tennessee Building
165 Madison Avenue
Memphis, Tennessee  38103
Telephone:      (901) 577-8110
Facsimile:      (901) 577-0893
E-Mail:  angiedavis@bakerdonelson.com
          jebelhar@bakerdonelson.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

        Edgar Davison
        The Davison Law Firm
        6000 Poplar Avenue, Suite 250
        Memphis, Tennessee 38119
        (901) 271-5566
        edgar@davisonlawfirm.net

                               s/ Catherine E. Lee
                              Catherine E. Lee