IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

RHONDA THEUS,                        )
                                     )
      Plaintiff,                     )
                                     )
v.                                   )      No. 09-2296
                                     )
GLAXOSMITHKLINE,                     )
                                     )
      Defendant.                     )
                                     )

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is the January 29, 2010, Motion for Summary Judgment filed by Defendant GlaxoSmithKline ("GSK").[1] See Fed. R. Civ. P. 56; Dkt. Nos. 25, 27. Plaintiff Rhonda Theus filed a response in opposition on March 8, 2010, and GSK filed a reply memorandum on March 17, 2010. Theus alleges that GSK violated the Tennessee Human Rights Act ("THRA") by creating a hostile work environment based on sexual harassment and retaliating when Theus complained of the harassment. See Tenn. Code Ann. §§ 4-21-301(1) & 4-21-401(a)(1). Theus also brings common law claims of intentional infliction of emotional

---

[1] Plaintiff Rhonda Theus originally also named her supervisor Michael Smith as a Defendant. On April 5, 2010, the parties jointly filed a stipulation dismissing all claims against Smith with prejudice. (See Dkt. No. 50); Fed. R. Civ. P. 41(a)(1). This Order, therefore, will address only the claims against GSK.

Case 2:09-cv-02296-SHM-dkv   Document 54   Filed 04/29/10   Page 2 of 26   PageID 676

distress and assault and battery.  For the following reasons,
Defendant's Motion for Summary Judgment is GRANTED.

**I.    BACKGROUND**

Unless otherwise stated in this Order, all facts recited
are undisputed for purposes of the Motion for Summary Judgment.
Theus began working for GSK's predecessor in August 1998 and
became an employee of GSK in July 2001.  (Defendant's Statement
of Undisputed Facts ¶ 1.)[2] ("Def.'s SOF")  She operated machinery
at GSK's Memphis plant, which prepared and packaged headache
powders.  (Id. ¶ 2.)  In early 2007, Theus, under the pseudonym
"GiniLay," began an internet-based adult business venture where
she published scantily clad photographs of herself and engaged
in sexually explicit conversation and behavior for her paying
customers.  (Id. ¶¶ 3-4.)  Theus' co-workers discovered her
adult website in July 2007, which led to a series of incidents
at work that Theus argues amount to sexual harassment.  (Id. ¶
5.)

On October 3, 2007, Theus filed her first complaint of
harassment with GSK's human resources advisor Todd Russell.
Theus alleged that her co-workers teased her about her sexually
explicit side job; talked about putting nails under her car's
tires; spread false rumors about her alleged relationships with

---

[2] Plaintiff filed no independent statement of facts.  Instead, she filed a
response to Defendant's Statement of Undisputed Facts.  (See Plaintiff's
Response to Defendant's Undisputed Facts, Dkt. No. 41, Ex. 2.) ("Pl.'s Fact
Resp.")

2

other GSK employees; speculated as to the status of her relationship with her fiancé; and regularly called her names such as "bitch," "whore," "slut," and "internet wench." (<u>Id.</u> ¶ 6; Pl.'s Fact Resp. ¶ 6.) Theus also asserted that a female co-worker had threatened to fight her and that several co-workers had followed her home. (Def.'s SOF ¶ 6.) After this complaint, Russell began an investigation. He interviewed seven of Theus' co-workers, including her immediate supervisor Joe Ervin. (<u>Id.</u> ¶ 9.) Although the employees Russell interviewed did not corroborate Theus' allegations, the employees did allege that Theus had spoken about her sexually explicit business ventures at work, threatened to fight her co-workers, called fellow employees "bitches and whores," and deliberately bumped into other GSK employees and "stared menacingly at them." (<u>Id.</u> ¶¶ 10-11.) Russell decided to take no disciplinary action against any GSK employee. (<u>Id.</u> ¶ 13.)

Theus next complained to Russell about alleged harassment on October 31, 2007, again asserting that her co-workers continued to spread unfounded rumors about her and followed her home. (<u>Id.</u> ¶ 14.) At this meeting, she was angry and agitated. (<u>Id.</u> ¶ 15.) Russell suggested that Theus call GSK's Employee Assistance Program, which is designed to handle workplace complaints, and call the police if anyone disturbed her at her home. (<u>Id.</u>)

GSK allowed Plaintiff to take a medical leave of absence from her job beginning November 11, 2007. (Id. ¶ 16.) While on leave, Theus saw several health care providers and talked to them about her difficulties at work. She confided in her therapist Mary Streete that she was "close to violence." (Id. ¶ 18.) Theus also told Dr. Diner, who was hired to perform an independent psychiatric evaluation, and Dr. Patterson[3] that she had contemplated hurting her co-workers.[4] (Id.)

Theus returned to work at GSK on March 24, 2008. (Id. ¶ 19.) Michael Smith became her new supervisor. (Id.) In early April, Plaintiff complained to Smith that her co-workers had resumed spreading false rumors, including a rumor that Plaintiff's fiancé "was using her as a sex toy." (Id. ¶ 20; Pl.'s Fact Resp. ¶ 20.) Plaintiff also alleged that the threats to flatten her car's tires and derogatory language continued. (Def.'s SOF ¶ 20; Pl.'s Fact Resp. ¶ 20.) Russell began a second investigation on April 8, 2008. (Def.'s SOF ¶ 23.) As part of his investigation, he interviewed eleven of Plaintiff's co-workers. Co-worker Priscilla Sharp reported that Plaintiff had told her, "[I]f any of these whores fuck with me, I am going to go to my car and get my pistol and blow their ass away." (Id. ¶ 24.) Doris Merriweather and Marcus Harris told Russell

---

[3] The record does not reveal the given names of Drs. Diner and Patterson.
[4] Although she disputes whether she would have acted on these thoughts, Theus does not dispute that she made these statements to her health care providers. (See Pl.'s Fact Resp. ¶ 18.)

that Theus had made similar statements to them. (Id.) Veola
Seals and Ollie Bowles reported that Theus had stared at them in
a menacing manner and intentionally bumped into them when
passing them in the plant.[5] (Id.) Russell also interviewed
Plaintiff, who once again accused her co-workers of spreading
false rumors about her, calling her "bitch, whore, and tramp,"
and following her home. (Id. ¶ 25.) Plaintiff specifically
accused Jerome Foster of repeatedly asking her out on dates and
propositioning her for sex. (Id. ¶ 41; Pl.'s Response Facts ¶
41.) Plaintiff also told Russell that fellow GSK employees
Vanessa Pulliam and Clarissa Reaves would substantiate her
allegations. (Def.'s SOF ¶ 28.) Despite the harassment, Theus
stated that she did not experience any change in her daily work
routine and described herself as a "happy mom." (Id. ¶ 46.)

Following his interview with Theus, Russell placed her on
paid administrative leave pending completion of the
investigation. Security escorted Plaintiff from GSK's property.
(Id. ¶ 30.) Russell then interviewed Pulliam and Reaves, both
of whom Plaintiff had described as trustworthy. (Id. ¶ 31.)
Although Plaintiff had told Russell that Pulliam and Reaves
could substantiate her allegations, neither woman claimed to

---

[5] Plaintiff denies that she made the threatening statements. She does not
deny that her co-workers told Russell that she had made such statements.
(See Pl.'s Fact Resp. ¶ 24.) It is undisputed that Plaintiff's co-workers
reported that she regularly made threatening statements. The Court makes no
finding about whether the co-workers' reports to Russell were accurate.

have witnessed any of the harassment Plaintiff alleged. (Id. ¶¶
28, 32.) Russell completed his investigation and concluded that
Plaintiff had violated GSK's Employee Conduct Policy and
Violence-Free Workplace Policy by repeatedly making violent
threats against her co-workers. (Id. ¶¶ 36-37.) Consequently,
on April 25, 2008, Russell terminated Theus. Russell made the
termination decision after consulting with GSK's legal
department, but without consulting any of Theus' supervisors.
(Id. ¶¶ 37-38.)

Plaintiff filed the present suit on April 7, 2009, in the
Circuit Court for Shelby County, Tennessee. Defendant removed
the suit to this Court on May 11, 2009, based on this Court's
diversity jurisdiction. (See Notice of Removal, Dkt. No. 1.)
In her Complaint, Plaintiff for the first time alleged that her
supervisor, Michael Smith, sexually harassed her. (Def.'s SOF ¶
39.) Specifically, Theus asserts that Smith 1) brushed up
against her and "threw kisses" at her, 2) asked her to dinner,
3) regularly made comments about her body and how her uniforms
looked on her, 4) winked at her, 5) suggested that, if she did
special favors for him, he would help "get her in a better
position," 6) asked her to reconsider her rejection of his
dinner invitation, and 7) "bumped into [her] butt." (Id. ¶ 39;
Pl.'s Facts Resp. ¶ 39.) All of these alleged incidents between
Smith and Theus occurred between March 24 and April 5, 2008.

(Def.'s SOF ¶ 39.)   Plaintiff also alleged for the first time that Marcus Harris had touched her hands and legs while repairing the machinery at her work station.[6]   Defendant's pending Motion for Summary Judgment tests the trial-worthiness of Theus' suit.

**II.   JURISDICTION, CHOICE OF LAW, AND STANDARD OF REVIEW**

Plaintiff brings this action under the diversity jurisdiction conferred by 28 U.S.C. § 1332(a)(1).   Plaintiff is a citizen of the State of Tennessee.   (Compl. ¶ 1.)   Defendant GSK is a Pennsylvania corporation with its principal place of business in North Carolina.   (Notice of Removal ¶ 3.)   Complete diversity is therefore present, and Plaintiff seeks damages in excess of $75,000.   (Compl. at 6-7.)

A federal court sitting in diversity applies the choice of law provisions of the forum state and federal procedural law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Plaintiff has filed suit under the common and statutory laws of the State of Tennessee.   Plaintiff's place of employment was also in Tennessee.   GSK agrees that Tennessee law applies.   The Court, therefore, will apply Tennessee law to the substantive issues in dispute.

---

[6] Plaintiff had accused Harris of general harassment, such as spreading false rumors and asking her on dates, but she did not report any inappropriate physical contact until she filed suit. (See Theus Dep., Dkt. No. 34, at 139: 15-23.)

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting [her]

8

claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for that evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor. See id. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**III. ANALYSIS**

**A. Hostile Work Environment Claim**

Theus' first claim is that the harassment she suffered while working at GSK created a hostile work environment prohibited by the THRA. (Compl. ¶¶ 21-24.) GSK responds that the statute of limitations bars Theus' claim because she reported only two minor incidents after April 7, 2008. (Defendant GSK's Memorandum in Support of Its Motion for Summary Judgment at 7-8.) ("GSK Memo") In the alternative, GSK argues that Theus has failed to establish a prima facie case of a hostile work environment and that it has established as a matter

9

of law the affirmative defense available to employers. (Id. at 8-15.)

### 1. Plaintiff timely filed her claim

The THRA prohibits employers from "fail[ing] or refus[ing] to hire or discharge[ing] any person or otherwise . . . discriminat[ing] against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's . . . sex." Tenn. Code Ann. § 4-21-401(a)(1).    It tracks the employment discrimination protections provided by federal law, and courts are to interpret the THRA's provisions in harmony with the federal statutes where possible.    See id. § 4-21-101(a)(1); Parker v. Warren County Util. Dist., 2 S.W. 3d 170, 172-73 (Tenn. 1999).    The THRA provides that a plaintiff must file suit on any claims of employment discrimination "within one (1) year after the alleged discriminatory practice ceases." Tenn. Code Ann. § 4-21-311(d). Addressing an analogous issue under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e)(1), the Supreme Court has held that, where a plaintiff's allegations are based on a hostile work environment theory, a plaintiff's claim is timely as long as one "act contributing to the claim occurs within the filing period." AMTRAK v. Morgan, 536 U.S. 101, 117 (2002).    If one act occurred within the limitations period, a court may consider "the entire time period of the hostile environment" to

determine liability, regardless of whether some individual acts occurred outside the limitations period. Id.; see also Spicer v. Beaman Bottling Co., 937 S.W.2d 884, 889-90 (Tenn. 1996) (adopting similar test under the continuing violation doctrine), overruled in part on other grounds by Booker v. Boeing Co., 188 S.W.3d 639, 649 (Tenn. 2006) (overruling suggestion in Spicer that the continuing violation doctrine is subject to the discovery rule).

Under the THRA's continuing violation doctrine, if Theus can point to one act forming part of her claim that occurred within the one-year period before she filed suit on April 7, 2009, her Complaint is timely and the Court may consider all alleged acts of harassment in assessing her claim. Morgan, 536 U.S. at 117; Spicer, 937 S.W.2d at 889. GSK admits that at least two incidents of alleged harassment occurred after April 7, 2008, placing them within the one-year limitations period: co-worker Bowles intentionally bumped into Plaintiff, and Foster inappropriately followed Plaintiff and witnessed her being pulled over by the police for having a malfunctioning headlight. (Def.'s SOF ¶ 26.) Because these incidents of alleged harassment occurred within the statutory one-year period, Plaintiff timely filed her suit under the THRA's statute of limitations, and the Court may consider all of the acts

Plaintiff alleges demonstrate a hostile work environment based on sexual harassment.  Spicer, 937 S.W.2d at 889.

### 2.  The alleged harassment was not "based on sex"

To survive summary judgment, Theus must first establish that her claim states a prima facie hostile work environment case against GSK.  Theus must demonstrate that 1) she is a member of a protected class; 2) she was subjected to unwanted harassment; 3) the harassment was based on her sex; 4) the harassment was severe and pervasive enough to create a hostile work environment; and 5) there is some basis for employer liability.  Ladd v. Grand Trunk Western R.R., 552 F.3d 495, 500 (6th Cir. 2009); Spicer, 937 S.W.2d at 888.  GSK argues that Theus fails the third, fourth, and fifth prongs.  (GSK Memo at 8-15.)

Statutes such as the THRA, "do[] not prohibit all verbal or physical harassment in the work place; [they are] directed only at 'discrimination . . . because of . . . sex'" in the terms or conditions of employment.  Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80 (1998) (emphasis and omissions in original).  To prevent the employment discrimination statutes from morphing into a general civility code, courts must focus on "[t]he critical issue [which is] whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."  Id. (quoting Harris

12

v. Forklift Sys., Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). Behavior that evinces an "anti-female animus" meets the based-on-sex requirement. Williams v. General Motors Corp., 187 F.3d 553, 565 (6th Cir. 1999). However, the THRA "does not protect against general harassment, regardless of how severe or pervasive it may be." Scarborough v. Brown Group, 972 F. Supp. 1112, 1122 (W.D. Tenn. 1997). A plaintiff may point to "[a]ny unequal treatment . . . that would not occur but for the employee's gender" to satisfy the third prong of the prima facie case test. Williams, 187 F.3d at 565 (emphasis in original).

Here, Theus alleges a series of incidents including employees' 1) repeatedly calling her "bitch," "whore," and "internet wench," 2) spreading false rumors about her relationship with her fiancé, 3) propositioning her for sex, 4) following her home and/or driving by her home, 5) threatening to put nails under her car's tires, and 6) making comments about her body. (Pl.'s Facts Resp. ¶ 6.) The Court must take into account the circumstances in which these incidents occurred, focusing on the "effects of the conduct on the victim-recipient." Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 272 (6th Cir. 2009). The incidents began only after Plaintiff's co-workers learned that Plaintiff operated a sexually explicit website. (Def.'s SOF ¶ 5.) Through her website, Plaintiff accepted money to perform sex acts via a "web

13

cam." (Id. ¶ 4.) With the exception of the alleged threats to place nails under her tires, the incidents arise from Theus' internet side venture, rather than any animus toward women. Plaintiff acknowledged this in her testimony. (See, e.g., Pl.'s Facts Resp. ¶ 6 (noting employees called Plaintiff an "internet wench" and offered to pay her to perform sexual acts).) She believed that her co-workers "were jealous of [her]" and her website and that this jealousy caused the incidents in question. (Theus Dep. at 81, 117, 379.) The THRA does not protect against acts based on a person's decision to run an adult business in her spare time. See Oncale, 523 U.S. at 81 ("Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex."); Scarborough, 972 F. Supp. at 1122 (no protection provided from "general harassment").

Theus alleges that she suffered ridicule at her job. "The issue, however, is whether this ridicule would not have occurred but for [her] sex." Noble v. Monsanto Co., 973 F. Supp. 849, 855 (S.D. Iowa 1997). The Court finds that any ridicule would have occurred regardless of her sex. Plaintiff's workplace was not permeated with anti-female animus. Cf. Gallagher, 567 F.3d at 272 n.2. No other female employee suffered any ridicule;

instead, employees are alleged to have targeted Theus out of jealousy and animus toward her adult website. (Theus Dep. at 81, 117, 379; Def.'s SOF ¶¶ 5, 43); see also Oncale, 523 U.S. at 80-81 (noting that a plaintiff may present "direct comparative evidence" about how alleged harassers treated different sexes to prove claim). From the viewpoint of the effects on the victim-recipient, an objective observer would not suspect sexual harassment. Cf. Noble, 973 F. Supp. at 854-55 ("The mere fact that incidents of harassment are vulgar or explicitly sexual in nature does not, without more, mean the harassment is necessarily based on gender." (citation omitted)); accord Gillming v. Simmons Indus., 91 F.3d 1168, 1169-70 (8th Cir. 1996) (holding that behaviors including yelling, "I don't want to rape you . . . . I just want to have sex with you," striking female plaintiff with both hands in the chest, and pointing at her while making harassing comments did not constitute actionable sexual harassment). Instead, the victim would attribute the offensive conduct to his or her cyber-moonlighting. That is exactly what Theus did. (Theus Dep. at 81, 117, 379.) Because the THRA is not a civility code and Theus cannot demonstrate that any harassment was because of her gender rather than her sexually explicit business venture, Theus has failed to establish a prima facie case of hostile work

environment based on sexual harassment.  See Oncale, 523 U.S. at 80.

### 3. There is no basis for employer liability

Even if Plaintiff could establish that the alleged harassment was based on sex, she cannot demonstrate that GSK would be liable.  Theus has alleged harassment by her supervisor, Smith, and by her co-workers.

An employer is liable vicariously for supervisor harassment.  Allen v. McPhee, 240 S.W.3d 803, 812 (Tenn. 2009). However, if the employer can demonstrate that 1) the harassing supervisor took no employment action against the employee; 2) the employer "took reasonable measures to prevent and correct discriminatory conduct"; and 3) "the employee unreasonably failed to take advantage of these preventative and corrective measures," employer liability is prohibited.  Id. at 813 (citation omitted).  Theus has acknowledged that her supervisors were not involved in either of the employment actions GSK took: her placement on administrative leave and her subsequent April 25, 2008 termination. (See Def.'s SOF ¶ 38; Pl.'s Fact Resp. at 5 (failing to object to ¶ 38).)

To satisfy the second prong of its affirmative defense, GSK must demonstrate that it took reasonable measures in response to the alleged conduct.  Allen, 240 S.W.3d at 813.  It is undisputed that GSK initiated two separate investigations into

16

Theus' allegations of sexual harassment. GSK interviewed more than twenty employees, including two employees, Pulliam and Reese, both of whom Plaintiff told GSK to interview because they would substantiate her claims. (Def.'s SOF ¶¶ 23, 28, 32-34.) These are steps a reasonable employer would take on receiving an allegation of sexual harassment. See Allen, 240 S.W.3d at 815 (noting that some allegations may require an employer to undertake an informal inquiry "to arrive at a reasonably fair estimate of truth" (citations and internal quotation marks omitted)). GSK's investigation revealed that no other employee had witnessed any of the harassment Theus claimed had occurred. (Def.'s SOF ¶¶ 10, 32.) Instead, the interviewed employees, including Pulliam, accused Theus of repeatedly threatening her co-workers. (See, e.g., id. at ¶¶ 24, 33.) No corrective action is necessary where an investigation fails to discover any corroborating evidence.[7] Cf. Allen, 240 S.W.3d at 817-18 (where employee's claims were corroborated, it was a jury question whether employer's delay in taking remedial actions was reasonable). GSK went a step further and allowed Theus to take a five-month leave of absence to serve as cooling-down period. (Def.'s SOF ¶ 16.) GSK also made certain that Theus had the Employee Assistance Program hotline number so that she could

---

[7] Whether GSK took reasonable corrective action in light of the serious threats the investigation revealed Theus allegedly made is a question not before the Court.

timely report any further allegations of harassment. (Id. ¶ 15.) These actions were all reasonable under the circumstances.

As part of the second prong of an affirmative defense, GSK must demonstrate that it exercised "reasonable care to prevent sexual harassment before it occurred." Allen, 240 S.W.3d at 816 (citations omitted). Tennessee courts have held that "the existence of an anti-harassment policy weighs heavily in favor of a conclusion that an employer has exercised reasonable care." Id. (citations omitted). GSK had such a policy. (See Harassment Policy, Dkt. No. 30, Ex. 1.) Theus acknowledged receiving both a copy of the policy and training on its terms. (See Dkt. No. 29, Ex. 8.) The policy provides formal and informal means of making a complaint; requires all managers to report promptly any and all accusations of harassment; and provides that, in the event a harasser is an employee's supervisor, the employee can report the inappropriate conduct to the plant's human resources department or the Employee Assistance Program hotline. (Harassment Policy at 2.) Where anti-harassment plans are widely distributed, contain reasonable reporting procedures, and provide a method to bypass a harassing supervisor, Tennessee courts find that they meet the requirements of the affirmative defense. See Allen, 240 S.W.3d at 816-17 (describing the requirements of a reasonable plan).

18

GSK has met the requirements of the second prong of its affirmative defense.

The final prong mandates that the employer prove that the employee failed to take advantage of the proper reporting procedures and corrective measures. Id. at 813. It is undisputed that Theus never reported her supervisor Smith's alleged harassment despite the existence of two reporting options that did not require informing Smith. (Def.'s SOF ¶ 39; Harassment Policy at 2.) An "employee's speculative fear of retaliation or subjective belief in the futility of complaining" cannot excuse her duty to follow an employer's reasonable complaint procedure. Allen, 240 S.W.3d at 817-18. Because Theus did not employ GSK's complaint procedure, although in her prior experience the procedure had led to a thorough investigation of her complaints, GSK has satisfied the affirmative defense's final prong. GSK has established its affirmative defense, and there is no basis for employer liability on Theus' allegations of supervisor harassment.

Similarly, there is no basis to hold GSK liable for harassment by Theus' co-workers. The THRA imposes direct liability on employers for harassment by co-workers if "the employer either knew or should have known of the harassment, and failed to take prompt and appropriate remedial action." Campbell v. Florida Steel Corp., 919 S.W.2d 26, 32 (Tenn. 1996)

(citations omitted, emphasis in original).  GSK argues that it
had no notice of the alleged harassment against Theus.  (GSK
Memo at 15.)  That argument is unpersuasive:  Theus reported
harassment to her supervisors at least three times, on October 3
and 31, 2007, and in early April 2008.  (Def.'s SOF ¶¶ 6, 14,
20.)  Nonetheless, GSK took prompt and appropriate remedial
action.  GSK conducted two extensive investigations, interviewed
numerous employees, and allowed Theus to take a lengthy leave of
absence.  (Id. ¶¶ 23, 28, 32-34.)  That GSK did not formally
punish any employees does not constitute actionable failure to
act where the two investigations did not reveal even one
corroborating witness.  To find otherwise would require
employers to impose punishment whenever a disgruntled employee
makes an unsubstantiated claim of sexual harassment – in effect
turning the anti-harassment statues into tools of harassment
themselves.  GSK is not liable based on Theus' allegations of
co-worker harassment.

### B. Retaliation

Theus next brings a claim for unlawful retaliation based on
her April 25, 2008 termination.  See Tenn. Code Ann. § 4-21-
301(1).  To establish a prima facie case of retaliation, a
plaintiff must establish that 1) she engaged in protected
activity, such as complaining of workplace harassment; 2) the
defendant knew of her exercise of protected rights; 3) the

20

defendant took a materially adverse action against her; and 4) there was a causal connection between her exercise of rights and the adverse employment action.   Allen, 240 S.W.3d at 819.   If the plaintiff meets this initial test, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the materially adverse action."   Id. at 821 (citations omitted).   If the defendant gives such a reason, the plaintiff must demonstrate that the reason is pretextual.   Id.   She may do so by showing that the reason 1) has no basis in fact; 2) did not actually motivate the employment action; or 3) was insufficient to warrant the action.   Ladd, 552 F.3d at 502.   The plaintiff bears the ultimate burden of persuasion throughout this process.   Allen, 240 S.W.3d at 821.

Assuming that Theus can meet her burden of establishing a prima facie case, GSK argues that it had a legitimate reason to terminate Theus:   her repeated threats against her co-workers to "blow their ass away" violated its Violence Free Workplace Policy.   (GSK Memo at 16-17.)   Theus responds that GSK's asserted reason is pretextual because GSK did nothing in response to her complaints that employees threatened her, followed her home, rifled through her locker, and threatened to place nails under her tires.   (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 17-18.) ("Pl.'s Resp.")   Thus, Theus asserts that, because GSK treated

21

similar situations differently, its claimed reason for terminating her must be pretextual. (Id. at 18.)

Plaintiff's argument is unpersuasive because the two situations she seeks to compare are not similar. No employee corroborated her allegations, including the two "trustworthy" employees Plaintiff specifically identified as having witnessed the harassment. (Def.'s SOF ¶¶ 10, 28, 32.) By contrast, no fewer than six employees reported to GSK that Theus had made threats against them personally or against her co-workers in general. (Id. ¶¶ 24, 33.) One of those employees was Pulliam, whom Theus had told Russell to interview because Pulliam would support Theus' allegations. (Id. ¶¶ 31, 33.)

GSK's Violence Free Workplace Policy prohibits any and all threats to engage in violent behavior. (Violence Free Workplace Policy, Dkt. No. 30, Ex. 4, at 2.) After its investigation, GSK had substantial corroboration for the allegations made against Theus and no corroboration for Theus' own claims. Theus does not dispute that GSK actually received the reports alleging that she had threatened her fellow employees; nor is there any evidence that GSK did not believe those reports. (See Pl.'s Resp. at 17-18); see also Ladd, 552 F.3d at 503 (finding that, even if all of the interviewed employees lied, the employer is not liable if it "acted upon an honest belief in its non-discriminatory reason and made a reasonably informed and

considered decision."). That GSK decided to treat these two different situations dissimilarly does not demonstrate pretext. Because Theus cannot meet her burden of demonstrating that GSK's nondiscriminatory reason is pretextual, GSK is entitled to summary judgment on Theus' retaliation claim under the THRA.

### C. Intentional Infliction of Emotional Distress

Theus' third claim is that, by allowing the harassment to continue, GSK is liable for intentional infliction of emotional distress ("IIED"). (Compl. ¶¶ 27-31.) Tennessee law requires that the conduct complained of 1) be "outrageous, not tolerated in a civilized society" and 2) "result[] in serious mental injury" for an action to lie. Scarborough, 972 F. Supp. at 1125 (citations omitted). Tennessee has adopted the definition of outrageous conduct in the Restatement (Second) of Torts:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly [i]ntolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

Medlin v. Allied Inv. Co., 398 S.W.2d 270, 274 (Tenn. 1966) (quoting Restatement (Second) of Torts § 46, cmt. d), overruled

23

on other grounds by Camper v. Minor, 915 S.W.2d 437, 446 (Tenn. 1996) (abandoning the physical injury rule).

As a corporate entity, GSK "may be liable for the infliction of emotional distress if its corporate supervisors and officials engage[d] in conduct that r[o]se[] to the level of reckless disregard of outrageous conduct." Pollard v. E.I. du Pont de Nemours, Inc., 412 F.3d 657, 665 (6th Cir. 2005) (applying Tennessee law). Liability requires that GSK 1) have been aware of its employee's outrageous conduct; 2) have failed to report or investigate the misconduct allegations; and 3) have failed to effectively restrain any guilty employees after it became aware of the misconduct. Id. Here, there is no dispute that GSK investigated Theus' claims of harassment. Despite the fact that co-workers corroborated none of Theus' allegations, GSK allowed her to take a leave of absence from mid-November 2007 until late March 2008. The record demonstrates that GSK took Theus' allegations seriously, acted appropriately, and failed to discipline any of Theus' co-workers when her allegations were not supported. Plaintiff has failed to set forth facts demonstrating that GSK's actions in response to her complaints fell below the required standard. GSK's Motion for Summary Judgment on Theus's IIED claim is GRANTED.

### D. Assault and Battery

Plaintiff's final claim is that GSK is liable for Smith's assault and battery of Plaintiff. (Compl. ¶¶ 32-38.) Tennessee applies a one-year statute of limitations to claims of assault and battery. <u>See</u> Tenn. Code Ann. § 28-3-104(a)(1) (providing a one-year limitations period for "injuries to the person"); <u>Bailey v. Tasker</u>, 146 S.W.3d 580, 585 (Tenn. Ct. App. 2004) (battery); <u>Johnson v. Corr. Corp. of Am.</u>, No. W2001-00763-COA-R3-CV, 2001 Tenn. App. LEXIS 952, at *10 (Tenn. Ct. App. Dec. 11, 2001) (assault). It is undisputed that the alleged assault and battery could only have occurred between March 24, 2008 and April 5, 2008, when Smith served as Theus' supervisor after her return from medical leave. (Def.'s SOF ¶ 39; Pl.'s Fact Resp. ¶ 39.) Plaintiff filed suit on April 7, 2009. (Compl. at 1.) Because Plaintiff filed suit after the one-year statute of limitations had run, the Court GRANTS GSK's Motion for Summary Judgment on Plaintiff's assault and battery claim.

### IV.   CONCLUSION

Plaintiff has failed to identify a disputed genuine issue of material fact as to any of her state-law employment discrimination and tort causes of action. Therefore, the Court GRANTS Defendant's Motion for Summary Judgment on all of Plaintiff's claims.

So ordered this 29th day of April, 2010.

                                s/ Samuel H. Mays, Jr.
                                SAMUEL H. MAYS, JR.
                                UNITED STATES DISTRICT JUDGE